FILED

2010 Jul-12  AM 09:01
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

DONNA HORTON MINTER,            )
                                )
          Plaintiff,            )
                                )
     v.                         )     CIVIL ACTION NO. 09-G-1629-E
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social Security, )
                                )
          Defendant.            )
                                )
                                )

## MEMORANDUM OPINION

The plaintiff, Donna Horton Minter, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Disability Insurance Benefits, Supplemental Security Income, and Disabled Widow's Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that

end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations

omitted). Substantial evidence is "such relevant evidence as a reasonable person would

accept as adequate to support a conclusion." Bloodsworth, at 1239.

### STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for

a period of disability, a claimant must be disabled. The Act defines disabled as the

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve

months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of

establishing entitlement to disability benefits, physical or mental impairment is defined as

"an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory

diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations

outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner

must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether she has a severe impairment;

(3)     whether her impairment meets or equals one listed by the Secretary;

(4)      whether the claimant can perform her past work; and

(5)      whether the claimant is capable of performing any work in the national
economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d

1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she

will automatically be found disabled if she suffers from a listed impairment.  If the

claimant does not have a listed impairment but cannot perform her past work, the burden

shifts to the Secretary to show that the claimant can perform some other job."  Pope at

477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner

further bears the burden of showing that such work exists in the national economy in

significant numbers.  Id.

In the instant case,  ALJ Charles L. Brower determined the plaintiff met the

first two tests, but concluded that while she has an impairment or combination of

impairments considered "severe," she did not suffer from a listed impairment.  In his

decision, the ALJ found that the plaintiff:

has the residual functional capacity to perform medium work, except that
she cannot frequently push with her left lower extremity, and she can only
occasionally climb, kneel, and crawl.

[R. 17].(footnote omitted)  Accordingly, the ALJ found the Plaintiff not to be disabled.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN OR OTHER SUBJECTIVE SYMPTOMS

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  See 20 CFR §§ 404.1529 and 416.929;  Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added).  Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY WHEN PAIN OR OTHER SUBJECTIVE SYMPTOMS ARE INVOLVED

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work.  In such cases, if the

vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit the plaintiff's pain testimony is found not to be supported by substantial evidence.

        In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law.  Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims."  Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain

testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.

## DISCUSSION

In his decision, the ALJ found that the plaintiff suffered from the severe impairments of "degenerative disc disease of the lumbosacral spine, degenerative joint disease of the left knee, and hypertension."  [R. 17].  However, he found that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals an impairment in the Listing of Impairments. . . ."  [Id.].  The ALJ concluded under step four of the sequential evaluation that the plaintiff can perform her past relevant work as a cosmetologist.  [R. 19].  However, this conclusion was based on the vocational expert's testimony regarding a residual functional capacity assessment made by the DDS reviewing physician.  That assessment was based on a statement by her treating physician, George Brelsford, M.D., that was made in response to the state agency's August 10, 2006, request for Dr. Brelsford's opinion regarding her ability to perform work related activities.  [R. 199].  Dr. Brelsford responded, "Donna Horton has no permanent disability that would keep her from working a regular job.  She has chronic headaches + back pain but is fully ambulatory."  [R. 200].  A careful review of the record reveals that the ALJ erred in relying on the vocational expert's testimony regarding the State Agency reviewing medical consultant, Ramona Minnis, M.D.

The plaintiff was 60-years-old at the time of the ALJ's decision. She had initially alleged disability as of October 1, 2005, but at the hearing the plaintiff amended

7

the onset date to August 18, 2006.  [R. 483].  She alleges disability primarily from

moderately severe low back pain which results in an inability to stand for more than 15

minutes at one time, and which limits her to sitting for no more than 30 to 40 minutes at

one time.  [R. 463, 480, 486].

   The medical evidence shows that the plaintiff presented at the emergency

room on July 1, 2005, complaining of back pain which radiated bilaterally to her hips.  [R.

107].  On August 2, 2005, the plaintiff was treated by Paul C. Lorenzen, M.D., an

orthopaedic surgeon, who diagnosed degenerative disc disease.  [R. 259].  On December

19, 2005, the plaintiff returned to the emergency room for hypertensive urgency, nausea

and vomiting, acute exacerbation of chronic back pain, and hypokalemia secondary to

severe vomiting.  [R. 125]. On May 19, 2006, Dr. Brelsford noted the plaintiff was

complaining of neck and back pain and multiple aches and pain, and mentioned pain

management as an objective.  [R. 196].  From May 2006 through August 2006, Dr.

Brelsford prescribed Lorcet and Soma.  [R. 202-204]  A June 28, 2006, MRI confirmed

the diagnosis of lumbar degenerative disc disease:

> 1. There is a compression of the L1 vertebra with approximately 30-
> 40% loss of height and there is some altered signal suggesting that
> this is relatively recent although perhaps not acute.  There is some
> retropulsion of bone at the superior posterior margin of L1 but this
> does not appear to remarkably compress the conus.
>
> 2. There is bulging of the L4-5 disc without a focal disc protrusion or
> high-grade stenosis.
>
> 3. There are degenerative changes of the L3-4, L4-5, L5-S1 discs with
> loss of disc height noted at L4-5 and desiccation of the other discs.

[R. 178].

The ALJ attempts to discredit the plaintiff's pain testimony by stating, "The medical evidence of record shows little treatment for back pain."  [R. 18].  This statement is in no way supported by substantial evidence.  Moreover, the medical evidence also shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations.  See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").  Therefore, the pain testimony of the plaintiff must be accepted as true.

Additionally, the ALJ attempts to discredit the pain testimony of the plaintiff by using the statement of Dr. Brelsford that she "has no permanent disability that would keep her from working a regular job.  She has chronic headaches and back pain but is fully ambulatory."  [R. 17](emphasis in original)  Dr. Brelsford's statement is inconclusive as to what activities qualify as a "regular job."  Because of the plaintiff's age, education and vocational profile, if the "regular job" mentioned by Dr. Brelsford was at the sedentary level, the plaintiff would be found disabled under the Medical Vocational Guidelines.

The ALJ and the vocational expert were aware that plaintiff had amended her alleged onset date at the hearing to one of advanced age:

Q:      Mr. Peacock, assume a person of Ms. Minter's age, education, and
        work history.  Assume further that this person suffers from
        limitations that don't allow her to stand for long periods of time, or
        sit for long periods of time and, therefore, she is restricted.  Such
        person is restricted in her ability to do work to the extent that she
        would normally do a job with a so called sit/stand option.  Is there
        other work in the national economy that such a person could do?

A:      At what level, Your Honor?  I mean, obviously, at her age, I mean
        she is –

Q:      Well, that is oh, we can grid her can't we?

A:      Yes, sir.  I mean, if she can't do her past work she is grid [sic].

ALJ:    Yeah.  Yeah.  I forgot about that.  Thanks, yeah.  I'm not even going
        to, yeah.  Mr. Peacock is right.  I don't even need to go into this
        inquiry.  Well, all right.  Let's we will put this case in post for four
        items.  Number one, the Stringfellow treatment records.  Number
        two, the Northeast Alabama RMC.  Number three, Sherrer's records
        as well as a statement of ability to work.  Number four, Brelsford
        since January 1st, well, Brelsford becomes irrelevant in view of the
        amended onset date.  Forget Brelsford, Mr. Willingham.

ATTY: Yes.

ALJ:    But if Sherrer's treatment records support a finding she can only do
        sedentary work, we will be able to grid her as of the amended onset
        date.  All right.  Is that a plan?

ATTY: Yes, sir.

ALJ:    That will work, right, Mr. Peacock?

VE:     Yes, sir.

ALJ:    Yeah.  Thanks for that.  I lost sight of the grids there.

[R. 487-488].  However, the ALJ dismisses this by stating, "Parenthetically, I must

note that I left the record open, giving Claimant an opportunity to submit a medical

10

source opinion from Primary Care Physician Sherrer.  I have received no opinion."

[R. 19].  "Because a hearing before an ALJ is not an adversary proceeding, the

ALJ has a basic obligation to develop a full and fair record.  This obligation exists

even if the claimant is represented by counsel, or has waived the right to

representation."  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir.

1981)(citations omitted).  One important aspect of the Commissioners' duty to

develop a fair and complete record is his duty to recontact a claimant's treating

physician.  The Commissioner's regulations provide as follows:

> (e) Recontacting medical sources.  When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision.  To obtain the information, we will take the following actions.
>
>> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.  We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.  We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source.  In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

20 C.F.R. § 404.1512(e).  In light of the foregoing, the ALJ's decision that the

plaintiff is capable of performing medium work is irrational and contrary to the

medical evidence.  The same is true for a hypothetical finding that the plaintiff can

11

perform light work.  Therefore, his decision is not supported by substantial evidence.

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  <u>Id.</u>

DONE and ORDERED 12 July 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.